**2023 UT App 113**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KEVIN RAMEY BLANKE,
Appellant.

Opinion
No. 20220104-CA
Filed September 28, 2023

Third District Court, Salt Lake Department
The Honorable Amy J. Oliver
No. 021908449

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

MORTENSEN, Judge:

¶1      In 2002, Kevin Ramey Blanke pled guilty to attempted child kidnapping. He reaffirmed this plea in February 2003 and was sentenced to an indefinite term of three years to life in May 2003. In 2016, Blanke moved to correct his sentence, claiming the sentence was illegal. The motion was denied, and that denial was affirmed on appeal. Then in 2021, Blanke moved to have his time to appeal as a matter of right reinstated, claiming that he was not informed that he could appeal his sentence. The district court denied this motion, and Blanke now appeals. We affirm.

BACKGROUND

¶2 In June 2002, Blanke came across a child, Elisabeth,[1] and her sister playing near a park. *See Blanke v. Utah Board of Pardons & Parole*, 2020 UT 39, ¶ 3, 467 P.3d 850. Blanke offered to pay them if they would go with him. *Id.* The sister declined, but Elisabeth left with Blanke. *Id.* Blanke then took Elisabeth to get ice cream, but when she got scared and asked to go home, Blanke returned her to the park. *Id.* Elisabeth, who had been gone about an hour and a half, was taken to the hospital, but an examination revealed no physical appearance of abuse. *Id.* Nor did Elisabeth claim that she had been harmed. *Id.* Blanke was charged with attempted child kidnapping. *Id.*

¶3 In December 2002, Blanke, represented by counsel (Counsel 1), entered into a plea agreement with the State. He acknowledged that his guilty plea would waive his "right to appeal the conviction and sentence." The district court engaged in a lengthy colloquy with Blanke, including giving Blanke and his attorney extra time to discuss the plea and the effect of waiving his appellate rights. The plea agreement also indicated that the State would "allow" Blanke to plead guilty to a second-degree felony in another kidnapping case. The reduction in that case was identified as a "strong consideration" in the plea agreement and was characterized as "part of the total package." After discussing the matter with Counsel 1, Blanke agreed to the offer and pled guilty to attempted child kidnapping, a first-degree felony.

¶4 Within a few weeks, Blanke filed a pro se motion to withdraw his guilty plea. First, he alleged that he was depressed, suffering from panic attacks, and unmedicated, asserting that it was apparent in the courtroom that he "was having problems" arising from these conditions. Second, he claimed that Counsel 1

---

1. We adopt the pseudonym used in previous proceedings.

had pressured him into agreeing to the plea and had not made an effort to develop a robust defense.

¶5    The court appointed new counsel (Counsel 2), and at a status hearing in February 2003, it appears that Blanke retracted his motion to withdraw his plea.[2] The minute entry for the hearing indicates that Blanke was present at the hearing (along with Counsel 2), that he pled guilty to attempted child kidnapping, and that he was sentenced in May 2003 to an indefinite term of three years to life.

¶6    In March 2016, Blanke filed a pro se motion to correct an illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure. Blanke argued that the court erred by sentencing him "when an unresolved motion to withdraw [his] plea was still before the court." *See* Utah Code § 77-13-6(2)(b) ("A request to withdraw a plea of guilty . . . shall be made by motion before sentence is announced. Sentence may not be announced unless

---

2. Blanke has neither provided a transcript of this hearing nor attempted to reconstruct it. If Blanke had wanted to include an accounting of the status conference as part of the record on appeal, he had a means to do so. *See* Utah R. App. P. 11(e) ("If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, . . . the appellant may prepare a statement of the evidence or proceedings from the best available means, including recollection. The statement must be served on the appellee, who may serve objections or propose amendments within 14 days after service. The statement and any objections or proposed amendments must be submitted to the trial court for resolution, and the trial court clerk will conform the record to the trial court's resolution."). Except for expanding the time for the appellee to object by four days, the current rule is substantially the same as the rule in effect at the time Blanke submitted his briefing on appeal. *Compare id.* R. 11(e) (2023), *with id.* R. 11(g) (2020).

the motion is denied."). The district court denied the motion, explaining that after Blanke filed his motion to withdraw his guilty plea, he again pled guilty at the February 2003 status conference prior to sentencing in May 2003, rendering his motion to withdraw his plea moot. The court clarified that Blanke's motion to withdraw addressed only the guilty plea he entered in December 2002, not the plea he entered in February 2003. "Accordingly," the court summarized, "no Motion to Withdraw Guilty Plea remained pending with regard to" Blanke's February 2003 plea "and the Court properly sentenced" Blanke in May 2003.

¶7     Blanke appealed, and this court subsequently affirmed the district court's order, stating,

> During the course of the [February 2003] hearing, Blanke, through counsel, reaffirmed his guilty plea, with the district court agreeing to take on an additional case in which Blanke was involved. In so doing, Blanke implicitly withdrew his motion to withdraw his plea. Thus, this motion was no longer pending before the district court. . . . Blanke never again raised his request to withdraw his plea despite not being sentenced until three months after he reaffirmed his plea. Accordingly, the district court did not err in denying the motion to correct an illegal sentence because no motion to withdraw his plea was pending at the time he was sentenced.

Blanke did not seek certiorari review of this court's order.

¶8     The current proceedings commenced in January 2021 with Blanke's pro se motion to reinstate time to file a direct appeal pursuant to rule 4(f) of the Utah Rules of Appellate Procedure. Blanke asserted that neither the sentencing court nor either of his attorneys informed him of his right to appeal and that, instead,

each told Blanke only that he would forfeit his right to direct appeal by entering his guilty plea. The court appointed Blanke new counsel (Counsel 3), who subsequently filed an amended reinstatement motion, again asserting that Blanke had not been advised of his right to appeal.

¶9 At the evidentiary hearing in November 2021, the district court requested "clarification" as to whether Blanke was "asking for the direct appeal right to be reinstated for his conviction or his sentence or both." Counsel 3 said it was both, clarifying that Counsel 2 retracted Blanke's motion to withdraw his guilty plea without obtaining Blanke's permission and that the sentencing court, Counsel 1, and Counsel 2 failed to tell him of his right to appeal his sentence.

¶10 On direct examination, Blanke testified that he "never went to" the February 2003 status hearing where Counsel 2 "reaffirmed [his] plea."[3] He further testified that at sentencing, where he was present, neither his counsel[4] nor the judge told him that he "had the right to appeal." But on cross-examination, Blanke admitted that Counsel 1, Counsel 2, and the sentencing court informed him that by entering a guilty plea he waived his right to appeal.

¶11 The district court denied Blanke's rule 4(f) motion. The court first found that the evidence demonstrated that Blanke had "waived his right to appeal his conviction," explaining that Blanke acknowledged waiving his right to appeal in his signed plea statement, that the judge confirmed his waiver at the change of plea hearing, and that Blanke had recently testified that Counsel 1 and Counsel 2 "told him that if he pled guilty he waived

---

3. As noted above, the minute entry indicates that Blanke was present at the status hearing.

4. It is unclear in the transcript whether Blanke was referring to Counsel 1 or Counsel 2.

his right to appeal." Moreover, the court noted that the Utah Court of Appeals had already determined that Blanke had implicitly withdrawn his original motion to withdraw when he pled guilty for a second time at the February 2003 status hearing and that the February 2003 plea was never withdrawn prior to sentencing.

¶12    Regarding the right to appeal his sentence, the district court found that Blanke "was informed of his right to appeal his sentence," explaining that Blanke's testimony that he was never informed of this right was "not credible" for three reasons. First, even though Blanke "admitted under oath at the evidentiary hearing that he waived his right to direct appeal of his conviction," he was "still assert[ing] that he was deprived of his right to appeal his conviction." Second, Blanke's testimony that neither the court nor his attorneys had informed him of his right to appeal was contradicted by the statement in his rule 4(f) memorandum that he "*truly believed* that he had given up his right to a direct appeal." Third, the fact that Blanke "did not file any appeal until 13 years after his sentencing (and then only did so on a collateral basis) confirm[ed] that he understood he had given up his right to a direct appeal."

¶13    Significantly, the court also concluded that Blanke was not prejudiced by the alleged failure to inform him of his right to appeal his sentence:

> Blanke failed to allege or present any evidence to establish that he would have appealed his sentence had he been informed of his right to do so. He likewise failed to allege or present any evidence demonstrating that the alleged failure of the court and counsel to inform him of his right to appeal was the "but for" reason that he failed to file a direct appeal of his sentence. In the absence of any such evidence, the Court finds that Mr. Blanke has failed

to meet his burden of demonstrating that he suffered any prejudice.

¶14     Blanke appeals.

ISSUE AND STANDARD OF REVIEW

¶15     The sole issue on appeal is whether the district court erred when it denied Blanke's motion to file a direct appeal from his 2003 sentence for attempted child kidnapping.[5] We review for correctness the court's legal conclusion that Blanke was not denied his right to appeal, but we give deference to the court's factual findings, reviewing them for clear error. *State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P. 3d 193, *cert. denied*, 300 P.3d 312 (Utah 2013).

ANALYSIS

¶16     The Utah Rules of Appellate Procedure provide, "Upon a showing that a criminal defendant was deprived of the right to appeal, the trial court shall reinstate the thirty-day period for filing a direct appeal." Utah R. App. P. 4(f). Our supreme court has stated that rule 4(f) requires a defendant to show (1) deprivation of the right to appeal and (2) that an appeal would have been taken had the defendant been properly informed of the right:

> Both our reinstatement [of the right to appeal] caselaw and rule 4(f) recognize that reinstatement is only appropriate where a defendant is "deprived" of the right to appeal. Implicit in this requirement is

---

5. Blanke states that he seeks to appeal only his sentence and that the district court misunderstood his rule 4(f) motion as seeking "to reinstate the right to appeal his conviction."

> the recognition that where a defendant would not
> have appealed anyway, there is no deprivation of
> the right to appeal and any error affecting that right
> would be harmless. Consequently, to show that any
> error was not harmless, a defendant seeking
> reinstatement relief . . . must show that had he been
> properly advised, he would have appealed.

*State v. Collins*, 2014 UT 61, ¶ 30, 342 P.3d 789.[6] In other words, "an error affecting the right to appeal is rendered harmless where the defendant would not have appealed regardless of the error." *Id*. ¶ 38; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) ("If the defendant cannot demonstrate that, but for counsel's deficient performance [in failing to file a notice of appeal without consent], he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."); *Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) ("*So long as a defendant can show* that counsel's constitutionally deficient performance deprived him of an appeal that he otherwise would have taken, courts are to presume prejudice with no further showing from the defendant of the merits of his underlying claims." (emphasis added) (cleaned up)).

¶17   Recognizing that the district court made a factual finding that Blanke had been informed of his right to appeal his sentence, for the purpose of our analysis we will nevertheless assume, without deciding, that Blanke was never informed of this right.

---

6. We acknowledge that the Utah Supreme Court's articulation makes sense in the context of reinstated appeals generally. However, we think that in the context of motions to reinstate the time to appeal a *sentence*, a defendant should also be required to show a likelihood that a better result would have been obtained if the reinstatement had occurred. In this case, we think it highly unlikely that even if the appeal time had been reinstated, any different sentence would have been rendered.

After all, the plea agreement that Blanke signed explicitly stated that his guilty plea would waive his "right to appeal the conviction *and sentence*." (Emphasis added.) As the State concedes in its briefing, "Blanke's plea statement did not properly inform him of his appellate rights" because "it stated that Blanke was giving up the right to appeal both his guilty plea and his sentence." And we will accept as true—for the limited purpose of our analysis—Blanke's word that he was not otherwise advised by the court or his attorneys of his right to appeal his sentence. *See State v. Brown*, 2021 UT 11, ¶ 16, 489 P.3d 152 (stating that under rule 4(f), being "deprived of the right to appeal" includes, among other scenarios, "the court or the defendant's counsel fail[ing] to properly advise [the defendant] of the right to appeal" (cleaned up)). But even if Blanke was never properly informed of his right to appeal his sentence, his claim of error still fails for lack of prejudice. In other words, Blanke never presented evidence to the district court that he would have appealed his sentence even if he had been properly informed of the right.

¶18 Instead of providing evidence that he would have appealed his sentence, Blanke argues that it "is more than implicit"—given his history of filing "post-conviction motions and appeals"—that "he would have filed a direct appeal had he known that he could." Blanke further argues that "there is nothing" in rule 4(f) that requires a showing of prejudice. He asserts—in a somewhat circular fashion—that "[c]ounsel was ineffective and prejudiced his rights at a critical stage of the proceeding wherein prejudice must be presumed." But that is not what our caselaw says. Rather than articulating a presumption of implied prejudice, our supreme court has adopted a more direct approach. There can be "no deprivation of the right to appeal" if the "error affecting that right [was] harmless." *See Collins,* 2014 UT 61, ¶ 30. And to establish that the error was harmful, a defendant "must show that had he been properly advised, he would have appealed." *Id.* Thus, to prevail on appeal, it is not enough for Blanke to say that he was not informed of the right to appeal—or

that he "would obviously have testified" that he would appeal "had the question been put forth." This reasoning descends into the realm of pure speculation. That Blanke would have pursued an appeal is not obvious in the absence of any evidence. Rather, our supreme court has clarified that a defendant in Blanke's position must carry the burden of proof that he would have appealed his sentence if properly informed of his right to do so.

¶19 Blanke presented no evidence that he ever contemplated appealing his sentence in a timely manner. Had he done so, this would be a different matter. If Blanke had asked his attorneys to appeal and they failed to follow through—or if Blanke had presented, for example, phone calls or letters that reflected his intention to timely appeal but that he was dissuaded from doing so because he was under the impression that an appeal was not an option—then there would have been some evidence that Blanke would have appealed. But that is not the case here. Blanke presented nothing to suggest that he ever expressed a wish to timely appeal his sentence to his attorneys, the court, or anyone else.

¶20 And Blanke likely had no intention of appealing his sentence for good reason. He pled guilty pursuant to a favorable plea agreement, one which allowed him to plead guilty to a second-degree felony in a separate, unrelated kidnapping case. Indeed, the reduction in that separate—and apparently more serious—case was identified as a "strong consideration" in the plea agreement reached in the case involving Elisabeth, being characterized by the court as "part of the total package." Because the plea agreement offered Blanke the chance to bring a resolution to both cases, there would have been no reason for Blanke to consider timely appealing his sentence for attempting to kidnap Elisabeth. Doing so would have run counter to his interests at the time.

¶21    Blanke has not met his burden of persuasion on appeal to show that he would have appealed his sentence had he been properly informed of his right to do so. Accordingly, we see no error in the district court's denial of his rule 4(f) motion.

## CONCLUSION

¶22    Any error in depriving Blanke the right to appeal his sentence must be considered harmless in the absence of evidence that Blanke would have otherwise pursued an appeal. We therefore conclude that the district court did not err in denying Blanke's motion to reinstate his time to file a direct appeal.

¶23    Affirmed.